**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| ROY LEE JONES, | ) | Case No.: 1:14-cv-01991 - JLT |
| | ) | |
| Plaintiff, | ) | ORDER DIRECTING ENTRY OF JUDGMENT |
| | ) | IN FAVOR OF DEFENDANT CAROLYN |
| v. | ) | COLVIN, ACTING COMMISSIONER OF |
| | ) | SOCIAL SECURITY, AND AGAINST |
| CAROLYN W. COLVIN, | ) | PLAINTIFF ROY LEE JONES |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Roy Lee Jones asserts he is entitled a supplemental security income and disability insurance benefits under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the medical record and in rejecting the credibility of his subjective complaints. Because the ALJ applied the proper legal standards and substantial evidence supports the determination, the administrative decision is **AFFIRMED**.

## **BACKGROUND**

In 2009, Plaintiff filed applications for benefits, in which he alleged disability beginning December 8, 2008. (Doc. 13-6 at 2, 9) The Social Security Administration denied the applications at the initial level and upon reconsideration. (Doc. 13-3 at 16; Doc. 13-5 at 6, 9-13) Plaintiff requested a hearing, and testified before an ALJ on April 15, 2011. (Doc. 13-3 at 28) The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on May

10, 2011.  (*Id.* at 16-23)  Plaintiff filed a request for review of the decision with the Appeals Council, which denied the request.  (*Id.* at 2-5)

Plaintiff filed a request for judicial review of the decision to this Court, thereby initiating Case No. 1:12-cv-1283-BAM.  (Doc. 13-13 at 21) The Court determined the ALJ erred in her assessment of the medical record and evaluating Plaintiff's credibility, and ordered the matter remanded for further proceedings.  (*Id.* at 33)  Accordingly, the Appeals Council vacated the decision of the Commissioner, and remanded the matter to a new administrative law judge.  (*Id.* at 43-44)

On July 30, 2014, Plaintiff testified at a second administrative hearing.  (Doc. 13-12 at 5, 60) The ALJ concluded Plaintiff was not disabled, and issued a decision denying Plaintiff's application for benefits on September 22, 2014.  (*Id.* at 5-18)  Plaintiff did not file any written exceptions, and the Appeals Council declined to assume jurisdiction.  (*See* Doc. 13-12 at 2-4) Therefore, the ALJ's decision became the final decision of the Commissioner.

**STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

**DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment

that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

## A.    Relevant Medical Evidence[1]

In September 2008, Plaintiff was diagnosed with obstructive pulmonary disease. (Doc. 13-8 at 4) On January 28, 2009, Plaintiff had x-rays taken of his chest due to his history of "[c]oughing for years." (*Id.* at 3) Dr. Mark Williams determined "[n]o congestive failure [was] evident" and his

---

[1] In the Court's order governing briefing in this matter, the parties were directed to include "a summary of all relevant medical evidence including an explanation of the significance of clinical and laboratory findings and the purpose and effect of prescribed medication and therapy." (Doc. 9 at 4) Plaintiff failed to comply with this order, and instead "stipulate[d] that the ALJ fairly and accurately summarized the medical and non-medical evidence of record, except as specifically stated [in the opening brief]." (Doc. 19 at 6) Counsel is reminded of the obligation to comply with the Court's orders, and is cautioned that the failure to comply with future orders may result in the imposition of sanctions.

Given the extensive nature of the medical record, the Court provides a summary only of the relevant medical evidence based upon the issues presented in Plaintiff's opening brief. However, the Court has read and considered the entirety of the medical record.

3

cardiac silhouette appeared normal. (*Id.*) In addition, Dr. Williams found "no acute cardiopulmonary disease." (*Id.*)

Plaintiff was referred to the San Joaquin Valley Pulmonary Medical Group for treatment. (Doc. 13-8 at 4) In April 2009, Corinne Preston, NFP-C, noted Plaintiff previously had a "lung surgery due to bleb rupture and multiple pneumothorax episodes." (*Id.*) Plaintiff said he did not have any limitations with activity, but he had difficulty breathing "a few times a day if walking more [than] 1 block." (*Id.*) Plaintiff reported he had shortness of breath and "pain 10 of 10 when he takes a deep breath." (*Id.* at 4) In addition, he told Ms. Preston that he smoked one pack per day, and had been smoking for twenty-five years. (*Id.*) Upon examination, his lungs were "clear to auscultation and percussion." (*Id.* at 5) Ms. Preston noted "[a] strong, clear, personalized message was given to the patient, urging smoking cessation." (*Id.*) She "urged [Plaintiff] to set a quit date within the next 2 weeks" and "encouraged total abstinence from smoking." (*Id.*)

On May 18, 2009, Plaintiff was referred to Dr. Vinod Kumar for a cardiology consultation at the Heart Center. (Doc. 13-9 at 7) Plaintiff reported he had chest pain on the left side, which had been "gradually getting worse for [the] last one month." (*Id.*) He also described "exertional shortness of breath, palpitations which are rapid, off and on and [felt] like skipping and dizziness off and on." (*Id.*) Dr. Kumar noted that he "[d]iscussed the importance and methods of diet, exercise and weight control with the patient." (*Id.*)

On May 26, 2009, Dr. Ahmed conducted a pulmonary function test on Plaintiff that indicated an airway obstruction. (Doc. 13-8 at 9) Plaintiff's "airway resistance [was] normal," but his lung volume was "reduced indicating a concurrent restrictive process." (*Id.*) Dr. Ahmed diagnosed Plaintiff with moderate obstructive airways disease, severe restriction, and increased diffusion. (*Id.*)

On May 27, 2009, Plaintiff went to the emergency room at San Joaquin Hospital, reporting he started having "crampy" abdominal pain. (Doc. 13-8 at 27) Plaintiff admitted a history of alcohol abuse, and said that "[o]ver the last year he ha[d] noted worsening abdominal pain, especially during binge drinking." (*Id.*) Plaintiff said he "began to binge drink" on Memorial Day weekend "and developed severe abdominal pain that did not resolve." (*Id.* at 25) Dr. Xolani Mdluli believed Plaintiff had "[a]cute pancreatitis of unclear etiology." (*Id.* at 22) Dr. Matuk conducted a gastroenterology

consultation on June 1, and diagnosed Plaintiff with pancreatitis and large pseudocysts. (*Id.* at 2) Plaintiff was transferred to Bakersfield Memorial Hospital on June 6, and discharged on June 8, 2009. (*See* Doc. 13-10 at 2-5, Doc. 13-11 at 101-06)

Dr. De la Rosa completed a physical residual functional capacity assessment on June 9, 2009. (Doc. 13-8 at 11-15) Dr. De la Rosa opined Plaintiff was able to lift and carry 10 pounds frequently and 20 pounds occasionally, stand about six hours in an eight-hour workday, and sit about six hours in an eight-hour day. (*Id.* at 12) Also, Dr. De la Rosa believed Plaintiff could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; but never climb ladders, ropes, and scaffolds. (*Id.* at 13) Dr. De la Rosa noted Plaintiff complained of shortness of breath and emphysema, yet continued to smoke one pack per day. (*Id.* at 12) In addition, Plaintiff's examinations "show[ed] nothing other than respiratory issues." (*Id.*) Dr. De la Rosa concluded Plaintiff "[s]hould be capable of light [work] w/ environments for lung issues." (*Id.*) Therefore, Plaintiff needed to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation. (*Id.*)

In August 2009, Plaintiff continued to "complain[] of left-sided chest pain." (Doc. 13-9 at 6) Dr. Kumar administered a Stress Test, during which Plaintiff exercised for 9 minutes and 18 seconds. (*Id.* at 19) Dr. Kumar noted Plaintiff "had no chest pain during the test, [but] had moderate shortness of breath." (*Id.*) According to Dr. Kumar, Plaintiff had a "good" capacity for exercise." (*Id.*) Dr. Kumar opined the results of the stress test were "consistent with low to intermediate probability of significant coronary artery disease." (*Id.*) Dr. Kumar noted he discussed "[d]iet, exercise, and [the] need for the smoking cessation" with Plaintiff. (*Id.* at 6)

On September 16, 2009, Plaintiff had a Gated SPECT Nuclear Scan due to his "chest pain, angina equivalent shortness of breath, palpitations and easy fatigability." (Doc. 13-9 at 20) Plaintiff "had chest pressure" and "mild shortness of breath" during the test. (*Id.*) Dr. Kumar found "no significant arrhythmias during the test," and expressed "doubt" that plaintiff had "significant coronary artery disease." (*Id.*) He recommended Plaintiff continue medical therapy, and "modify risk factors with aggressive plaque regression management." (*Id.*)

Plaintiff reported he was doing the "same" in October 2009, but continued to report fatigue and shortness of breath with walking three to four blocks. (Doc. 13-9 at 3) He also reported having

dizziness and heart palpitations "sometimes." (*Id.*) Dr. Ahmed opined Plaintiff's COPD was "stable," but recommended Plaintiff discontinue smoking. (Doc. 13-10 at 115) Similarly, Dr. Kumar again discussed diet, exercise, weight control, and "smoking cessation" with Plaintiff. (Doc. 13-9 at 3)

Dr. Keith Wahl reviewed the medical record on January 26, 2010. (Doc. 13-9 at 21) He noted the heart test results "appear[ed] normal" and "[t]he magnitude of the alleged physical limitations [was] not significantly increased by the objective physical findings or laboratory data." (*Id.* at 23) Dr. Wahl concluded Plaintiff was capable of light work, and affirmed the findings of Dr. De la Rosa "as previously written." (*Id.*)

In April 2010, Plaintiff reported he continued to smoke, and he believed "Chantex [was] too expensive." (Doc. 13-10 at 112) Ms. Preston found Plaintiff's lungs were "clear to auscultation in all fields, normal respiratory effort, and no obvious accessory muscle use." (*Id.*) In addition, Plaintiff's heart had "no cardiomegaly or thrills" and "no murmur or gallop." (*Id.*) Ms. Preston gave Plaintiff a "Chantex coupon for 1 month free." (*Id.*)

At a follow-up appointment in July 2010 with Ms. Preston, Plaintiff reported he continued to smoke. (Doc. 13-10 at 110) Ms. Preston noted Plaintiff "[w]as unable to get Chantex due to insurance coverage." (*Id.*) She again "urged [Plaintiff] to set a quit date within the next 2 weeks," but he "chose not to." (*Id.*) Ms. Preston promised Plaintiff that she would "be of assistance when [he] was ready to quit." (*Id.*)

On August 26, 2010, Plaintiff was again admitted in the hospital for "severe abdominal pain and some nausea but no vomiting." (Doc. 13-11 at 78) Dr. Rahal, a gastroenterologist, evaluated Plaintiff and administered "IV fluids, along with pain control and nausea control medications." (*Id.*) Plaintiff told Dr. Rahal he did not smoke but gave a "history of moderate to heavy alcohol use." (*Id.* at 82) Dr. Rahal explained the "[l]ong-term complications of alcohol including cirrhosis" and placed a "[s]trong emphasis on avoiding alcohol." (*Id.* at 83) Plaintiff was again diagnosed with pancreatitis, and discharged in stable condition on September 1. (*Id.* at 95)

In October 2010, Plaintiff had another Gated SPECT Nuclear Scan, and 2D Echo and Specttral Doppler Exam. (Doc. 13-10 at 122-23) Plaintiff "had no chest pain during the test, [but] had severe shortness of breath." (*Id.* at 122) Dr. Kumar determined Plaintiff had "[m]ild mixed perfusion defect

in the inferolateral wall with partial reversibility in the inferolateral wall of the left ventricle consistent with mixed myocardial ischemia and scarring of the inferolateral wall." (*Id.*) In addition, Dr. Kumar found Plaintiff had "abnormal wall motion and thickening" and "trace" mitral and aortic regurgitation. (*Id.* at 123) (*Id.*) The Echo and Spectral Doppler Exam was "otherwise normal." (*Id.*) Dr. Kumar recommended that Plaintiff "[c]ontinue medical therapy [and] modify risk factors." (*Id.* at 122)

Dr. Mushtaq Ahmed completed a Pulmonary Medical Source Statement on November 2, 2010. (Doc. 13-9 at 24-27) Dr. Ahmed noted he treated Plaintiff "every 3 months" for COPD and tobacco abuse. (*Id.* at 24) He indicated Plaintiff had "extreme shortness of breath & has dyspnea on exertion" if placed in a competitive work situation. (*Id.* at 25) Dr. Ahmed opined Plaintiff was able to walk two blocks at one time, sit for one hour and twenty minutes at one time, and stand for an hour and fifteen minutes at one time. (*Id.*) In addition, he believed Plaintiff could rarely lift and carry less than 10 pounds; rarely twist; and never stoop, crouch, squat, or climb. (*Id.* at 26) According to Dr. Ahmed, Plaintiff's "condition [was] affected by environments," and he needed to avoid all exposure to cigarette smoke, extreme cold and heat, high humidity, solvents, fumes, odors, gases, and dust. (*Id.* at 26-27)

In December 2010, Plaintiff reported he was "[f]eeling well," and he did not have chest pain or dyspnea. (Doc. 13-10 at 101) However, Plaintiff also stated that he had a "limitation of activity." (*Id.*) Ms. Preston observed that Plaintiff was "well nourished in no distress," and had a "regular rate and rhythm, no murmur or gallop" in his heart. (*Id.*) Ms. Preston found Plaintiff's spirometry showed "Overall Improvement." (*Id.*) Ms. Preston again advised Plaintiff "to minimize exposure to factors that cause exacerbation of symptoms," noted "[a] strong, clear, personalized message was given to [Plaintiff], urging smoking cessation." (*Id.* at 102)

In February 2011, Plaintiff went to the UCLA medical Center for pain left shoulder and spleen. (Doc. 13-11 at 114) Plaintiff described the pain as "throbbing, shooting, moderately stabbing, cramping, [and] tiring." (*Id.*) He said that the pain, "at its worst it is 10/10, at best it is 10/10." (*Id.*) Dr. Lee recommended Plaintiff be evaluated "for cause of persistent splenic infarction versus spleen. (*Id.* at 115) Dr. Lee recommended he take ibuprofen and Vicodin, but did "not recommend invasive intervention for []his pain." (*Id.*)

Plaintiff went to the emergency room for "[l]eft side and shoulder pain" on March 15, 2011.

(Doc. 13-11 at 5)  Plaintiff reported he had pain "on and off for the last 2 years," which "seem[ed] to have gotten a little worse over the last several days."  (*Id.*)  Plaintiff said he "ha[d] not had any alcohol for at least 2 weeks and ha[d] no history of any large amounts of alcohol consumption."  (*Id.*)  After receiving medication, Plaintiff reported his "pain was considerably improved," and he was discharged in stable condition on the same day.  (*Id.* at 6)

In April 2012, Plaintiff reported his symptoms were stable.  (Doc. 14-2 at 3)  Paul Runyan, a physician's assistant, noted Plaintiff was "actually improveing" [sic]  (*Id.*)  Plaintiff's lungs were "clear to auscultation."  (*Id.* at 4)  Also, Plaintiff's results on the endoscopic ultrasound ("EUS") examination with Dr. James Farrell were "much improved compared with the last examination."  (*Id.* at 96, 99)

On October 25, 2012, Plaintiff said he was doing "well overall" though he had "intermittent episodes of chest pressure with dyspnea."  (Doc. 14-3 at 12, emphasis omitted)  He reported that he "use[d] Combivent during episodes and chest pain and dyspnea subsides."  (*Id.*)  Plaintiff's lungs were "clear to auscultation in all fields."  (*Id.*)

In November 2012, Plaintiff reported he was an "every day smoker," and there was no indication he had tried to quit.  (Doc. 14-2 at 9-10)  He said he had "a history of alcohol use, but no current usage."  (*Id.* at 10)  Plaintiff described his pain as a 4/10.  (*Id.* at 11)  Upon examination, Dr. Ryan Cabatbat determined Plaintiff's lungs were "clear to auscultation" and his heart had "[n]o murmurs, gallops, or rubs."  (*Id.* at 11)  Dr. Cabatbat counseled Plaintiff regarding quitting smoking due to his COPD, and indicated Plaintiff was given a card "for 1800-No-Butts."  (*Id.*)

From February through May 2013, Plaintiff reported he was "doing the same" and had no new complaints.  (*See* Doc. 14-3 at 57-60)  He said his abdominal pain ranged from 6/10 to 7/10.  (*Id.*)  His lungs remained clear upon examination.  (*Id.*)  A pulmonary function test in June 2013 indicated Plaintiff had "[m]ild airway obstruction."  (*Id.* at 41)

In October and November 2013, Plaintiff reported his pain controlled "better [with] meds" and decreased to 4/10.  (Doc. 14-3 at 50-51)  In December, Plaintiff reported his pain was the "same," although he rated it as a 5/10.  (Doc. 14-6 at 24-25)  Plaintiff's COPD was "stable" and his lungs remained clear.  (Doc.14-3 at 51; Doc. 14-6 at 24-26)

Dr. Ahmed completed a medical statement on May 12, 2014. (Doc. 14-6 at 17) He opined Plaintiff had a chronic and acute condition that prevented him from being able to work. (*Id.*) Treatment notes from June 2014 indicate Plaintiff continued to smoke 6-7 cigarettes per day, and was again "counseled on cessation." (Doc. 14-6 at 29)

**B.      Administrative Hearing Testimony**

Plaintiff testified at a hearing before an ALJ on July 30, 2014. (Doc. 13-12 at 62) He reported he last worked as a janitor for "a year, year and a half," ending in December 2008. (*Id.* at 63) Plaintiff said his prior employment included working labor work for a temp agency, as a fabricator, doing silk screening on shirts, and as a stock clerk for Walmart. (*Id.* at 63-65) He reported that he stopped working "[b]ecause [he] kept getting sick." (*Id.* at 65)

He reported that he had chronic pain in his "stomach area," back, and the top of his chest. (Doc. 13-12 at 69) Plaintiff explained his "spleen had ruptured and it had bruised [his] pancreas so it caused… cysts." (*Id.*) In addition, Plaintiff said he had heart problems, including an irregular heartbeat that was caused by emphysema, bronchitis, and asthma. (*Id.* at 71-72) He stated he had shortness of breath "like a weight on [his] chest" when he walked for a long period of time. (*Id.* at 72)

Plaintiff reported he stopped smoking "like four or five months ago" and was wearing a nicotine patch. (Doc. 13-12 at 65) However, Plaintiff said he smoked marijuana "[e]very now and then," with the last time being two weeks before the hearing. (*Id.* at 66) He testified he last drank alcohol "[o]ver a year ago." (*Id.*)

Plaintiff stated he used two inhalers, taking "two puffs two times a day." (Doc. 13-12 at 73) He said his physician recommended he use a nebulizer, but his health insurance would not pay for it. (*Id.* at 73-74) Plaintiff reported he smoked marijuana because "[i]t kind of helps with [his] pain." (*Id.* at 74) In addition, Plaintiff reported he wore a Fentanyl patch and took "Norco pain medication and ibuprofen" for his pain. (*Id.* at 76)

He testified that on a typical day, he would try to help with chores but "can't finish." (Doc. 13-12 at 66-67) Plaintiff explained he would "try to make up the bed," but his wife "usually has to finish it." (*Id.*) In addition, Plaintiff said he would do some dishes, but could not wash "a sink load" because he was unable to stand that long. (*Id.* at 68) He stated that he spent most of the day "laying down,"

because sitting caused "back pain and stomach pains and chest pains." (*Id.* at 67) Plaintiff reported that his doctor told him he "had to do some type of exercise," so he would "try to walk block to block." (*Id.* at 68)

Plaintiff estimated he was able to lift "[b]etween five to eight pounds, no more than 10." (Doc. 13-12 at 66) He believed he was able to stand "[a]bout an hour, hour and a half," walk about 30 minutes, and sit "[a]bout an hour to an hour and a half." (*Id.*) According to Plaintiff, he avoided being out in the heat or cold weather, because of difficulty breathing. (*Id.* at 74-75) Similarly, Plaintiff reported he avoided being around crowds "because someone in that crowd can be sick and [his] lungs cannot handle that sickness." (*Id.* at 75)

## C.    The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial activity after the application date of March 31, 2009. (Doc. 13-12 at 7) Second, the ALJ found Plaintiff "has the following severe impairments: moderate chronic obstructive pulmonary disease (COPD), tobacco abuse, emphysema and asthma." (*Id.*) At step three, the ALJ opined these impairments did not meet or medically equal a listed impairment. (*Id.* at 8) Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except lifting and carrying 20-pounds occasionally and 10-pounds frequently. He can complete an 8-hour workday if given the option to alternate between sitting and standing in one-hour increments but could not be exposed to dust, fumes, industrial pollutants or temperature extremes.

(*Id.* at 9)

With this residual functional capacity, the ALJ determined that Plaintiff was not capable of performing her past work as an administrative assistant, clerk, or receptionist. (Doc. 7-3 at 47) However, the ALJ found Plaintiff was able to perform other "jobs that exist in significant numbers in the national economy." (*Id.*) Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 48)

## DISCUSSION AND ANALYSIS

Appealing the decision to deny his application for benefits, Plaintiff asserts the ALJ erred in rejecting the opinion of his treating physician. (Doc. 19 at 7-10) In addition, Plaintiff contends the ALJ erred in finding his claims of disabling limitations are not credible. (*Id.* at 11-15) On the other

10

hand, Defendant argues, the ALJ properly evaluated the medical record and Plaintiff's credibility, and concludes that the "decision was supported by substantial evidence and free of reversible legal error." (Doc. 22 at 10)

## A.     The ALJ's Credibility Determination

When evaluating a claimant's credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Next, if there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility. *Id.* at 1036. In this case, the ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 13-12 at 10) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of the[] symptoms are not entirely credible." (*Id.*) Accordingly, the ALJ concluded Plaintiff was "not credible." (*Id.*)

An ALJ must base an adverse credibility determination on clear and convincing evidence where there is no affirmative evidence of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). Factors the ALJ may consider include, but are not limited to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). To support an adverse credibility determination, the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

In this case, the ALJ considered Plaintiff's failure to comply with the treatment plan to quit smoking, inconsistent statements, conflicts between Plaintiff's statements and the medical record, the

effectiveness of treatment, and the objective medical evidence. (*See* Doc. 13-12 at 10-12) The Ninth Circuit has determined these may be relevant factors in assessing the credibility of a claimant. *See Fair,* 885 F.2d at 603; *Thomas*, 278 F.3d at 958-59.

       1.     Plaintiff's failure to quit smoking

The Regulations caution claimants that "[i]n order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." 20 C.F.R. §§ 404.1530(a), 416.930(a). If a claimant fails to follow the prescribed treatment without an acceptable reason, the Commissioner "will not find [the claimant] disabled." 20 C.F.R. §§ 404.1530(b), 416.930(b). Accordingly, the Ninth Circuit determined, "[A]n unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony." *Fair*, 885 F.2d at 603. Therefore, noncompliance with a prescribed course of treatment is clear and convincing reason for finding a plaintiff's subjective complaints lack credibility. *Id.; see also Bunnell*, 947 F.2d at 346. Here, the ALJ observed that Plaintiff had "a long history of continuing to abuse tobacco despite the repeated admonishments of treating and examining sources that he must quit." (Doc. 13-12 at 10) Defendant argues this was a proper factor in the credibility analysis. (Doc. 22 at 9, citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009))

In *Bray*, the ALJ noted the claimant "continued to smoke cigarettes up until one month before her hearing, despite complaining of debilitating shortness of breath and acute chemical sensitivity." *Id.*, 554 F.3d at 1227. "The ALJ reasoned that if Bray's respiratory ailments were as severe as she claimed, she would likely refrain from smoking." *Id.* The claimant argued the ALJ erred by considering her failure to quit smoking as part of the credibility determination. *Id.*, 554 F.3d at 1227. The Ninth Circuit observed, "It is certainly possible that Bray was so addicted to cigarettes that she continued smoking even in the face of debilitating shortness of breath and acute chemical sensitivity." *Id.* The Court declined to determine whether the ALJ erred in considering the failure to quit smoking because "the ALJ presented four other independent bases for discounting Bray's testimony, and each finds ample support in the record," explaining "the ALJ's reliance on Bray's continued smoking, even if erroneous, amounts to harmless error." *Id.* However, the Court also concluded the plaintiff's failure to

quit smoking until shortly before her hearing date "belie[d] Bray's claim of debilitating respiratory illness." *Id.* Similarly, here, Plaintiff's failure to quit smoking, despite being told do so by his physicians, undermines the credibility of his complaints of debilitating COPD and chest pain. Moreover, Plaintiff claimed he *did* stop smoking "like four or five months ago" which indicates he could stop, if he chose. (Doc. 13-12 at 65)

Moreover, courts throughout the Ninth Circuit have determined that smoking against medical advice— particularly where a condition is aggravated by smoking—undermines the credibility of a claimant's subjective complaints. *See, e.g., Bybee v. Astrue*, 2011 WL 6703568 at *8 (E.D. Cal. Dec. 21, 2011) (finding that "[s]moking despite medical advice to quit is relevant to the credibility analysis, as is evidence of successfully quitting smoking for significant periods"); *Broughton v. Astrue*, 2012 U.S. Dist. LEXIS 65227 (C.D. Cal. May 8, 2012) ("plaintiff's failure to follow to comply with the advice to stop smoking arguably also constituted a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination"); *see also Wagnon v. Colvin*, 2016 U.S. Dist. LEXIS 10580 at *9-10 (D. Or. Jan. 28, 2016) (finding the ALJ properly determined the "plaintiff's non-compliance with medical advice to discontinue drinking alcohol and smoking tobacco undermined the credibility of his subjective complaints" where the plaintiff "acknowledged that he continued to smoke contrary to medical advice and despite his history of cardiovascular problems").

Here, as the ALJ observed, the medical record reflects that Plaintiff "repeatedly admonished and counseled to quit smoking" due to his COPD. (Doc. 13-12 at 12; *see also* Doc. 13-12 at 10-11; Doc. 13-9 at 3; Doc. 13-10 at 102, 115; Doc. 14-2 at 11) As the ALJ explained: "If the claimant's respiratory systems were as severe as he alleges, it is reasonable to expect him to follow medical advice and quit smoking." (Doc. 13-12 at 10) The ALJ noted the record showed Plaintiff's pulmonary function tests have improved from moderate to mild, and "clearly shows that if the claimant quit smoking, his COPD would only improve further." (*Id.*) Because Plaintiff has not explained his failure to comply with the treatment plan to quit smoking, this factor supports the ALJ's adverse credibility

determination.[2]

## 2.    Inconsistent statements

An ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).For example, in *Thomas*, the ALJ determined the claimant "had not been a reliable historian, presenting conflicting information about her drug and alcohol usage." *Id.*, 278 F.3d at 959.  Ms. Thomas denied using drugs and alcohol to one physician, but later "admitted to alcoholism and to smoking 'a little pot.'" *Id.*  On another occasion, Ms. Thomas reported "she had not drunk alcohol for 'several months' and 'had not smoked marijuana for about a year." (*Id.*)  The Ninth Circuit determined the ALJ did not err by inferring "that this lack of candor carries over to her description of physical pain." (*Id.*)

Similarly, in this case, the ALJ found Plaintiff made inconsistent statements regarding his smoking, and "minimize[d] the extent of his tobacco use."  (Doc. 13-12 at 10)  Specifically, the ALJ noted that Plaintiff "testified that he quit smoking four or five months prior to the latest hearing, or approximately January or February 2014, [but] the record indicates he continued to smoke 6-7 cigarettes daily at least through June 2014, long after his testimony would indicate."[3]  (*Id.*, citing Doc. 14-6 at 29)  Because the ALJ identified inconsistencies in Plaintiff's testimony, his lack of candor supports the adverse credibility determination.  *See Thomas*, 278 F.3d at 959; *see also Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (finding the claimant's "various statements regarding his drinking were not consistent" and supported the adverse credibility determination).

## 3.    Effectiveness of treatment

When assessing a claimant's credibility, the ALJ may consider "the type, dosage, effectiveness,

---

[2] Notably, although Plaintiff reported he was unable to afford Chantex, he received a coupon for a month's supply for free.  (*See* Doc. 13-10 at 112)  In addition, Plaintiff was provided contact information "for 1800-No-Butts."  (*See* Doc. 14-2 at 11).  Finally, his ability to support his smoking habit undermines the contention that he could not afford treatment to quit smoking.  *See Kocher v. Colvin*, 2015 U.S. Dist. LEXIS 151786 at * 26 (D. Nev. Sept. 29, 2015) (finding a "discrepancy between plaintiff's apparent ability to afford to smoke a half pack of cigarettes each day, and the financial distress he alleged as a reason for not seeking treatment").

[3] Plaintiff also made inconsistent statements regarding his alcohol use, reporting in April 2012 that he "had no history of any large amounts of alcohol consumption" (Doc. 13-11 at 5), though he previously admitted he engaged in "binge drinking," which caused worsening abdominal pain.  (Doc. 13-8 at 27).

and side effects of any medication." 20 C.F.R. §§ 404.1529(c), 416.929(c).  Importantly, when an impairment "can be controlled effectively with medication," it cannot be considered disabling.  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

In this case, the ALJ found the treatment Plaintiff received was effectively treating several of his impairments—including pancreatitis, gastro-esophageal reflux disease, and abdominal pain.  (*See* Doc. 13-12 at 8)  Specifically, the ALJ observed:

> The claimant has a history of chronic pancreatitis that responds to abstinence from alcohol (Exhibits 6F, 11F, and 26F, page 3) and has been treated conservatively and effectively with medication.  (Exhibit 21F).  The claimant has also been diagnosed with gastro-esophageal reflux disease (GERD) that is caused by use of non-steroidal anti-inflammatory drugs (NSAIDS) with no other abnormalities under pathology examination (Exhibit 26F, pages 9-10), that has been fully treated with proton-pump inhibitor (PPI) medication and anti-reflux instructions (Exhibit 26F, page 3)… The claimant's abdominal pain complaints are full[y] controlled with the use of narcotic pain medication and patches, as prescribed and followed by Ashok Parmar, M.D. (Exhibit 21F).

(*Id.*) In addition, the ALJ noted Plaintiff reported his pain was "alleviated with medication."  (*Id.* at 11) Thus, the ALJ concluded Plaintiff's "chronic pancreatitis is controlled with medication and alcohol abstinence."  (*Id.* at 11)  Likewise, the ALJ determined Plaintiff was "treated conservatively for his COPD," and the pulmonary function tests "indicated overall improvement with the claimant's compliance with medication and nebulizer," with the level of obstruction "going from moderate in 2010 to mild in 2013 with continued treatment.  (*Id.* at 10, 12)

Moreover, the ALJ noted Plaintiff "repeatedly report[ed] he was 'feeling well' with no new complaints."  (Doc. 13-12 at 12, citing Exhibit 12F, page 2)  Because Plaintiff's impairments were being treated successfully and reduced the severity of his symptoms, the effectiveness of the treatment supports the ALJ's adverse credibility determination.

### 4. Conflicts with the medical record

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility."  *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 (the "lack of medical evidence cannot form the sole basis for discounting pain testimony"). Because the ALJ did not base the decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor in determining Plaintiff's credibility.

However, if an ALJ cites the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible").

In this case, the ALJ found that "[t]he treatment record simply does not support the allegations of the claimant…" (Doc. 13-12 at 10) For example, the ALJ observed:

> Treatment notes from Clinica Sierra Vista dated October 2008 through May 2013, indicate the claimant was followed for his chronic pancreatitis, which is noted to be stable and causing no symptoms (Exhibit 19F, pages 1-2). In all these treatment notes, the claimant was simply noted to have a history of COPD, but there is no mention of significant symptoms, shortness of breath or any indication the claimant requested treatment for that condition while hospitalized. In fact, all his physical examinations are normal and his lungs repeatedly clear (Exhibit 19F, pages 6-15).

(*Id.* at 11) In addition, the ALJ noted Plaintiff's echocardiogram and stress scans showed "mild fixed perfusion defect with no significant ischemia and left ventricular ejection fraction of 71-percent with normal wall motion and thickening." (*Id.* at 12) The ALJ opined these "findings are inconsistent with any significant impairment, with testing clearly revealing no significant cardiac impairment, including no significant arrhythmia and normal sinus rhythm on EKG." (*Id.*, citing Doc. 13-9 at 8-9) Further, the ALJ observed that Plaintiff's most recent pulmonary function test "showed …significant improvement" with only mild obstructive airway disease." (*Id.* citing Doc. 14-3 at 40-41)

Accordingly, the ALJ met the burden to identify evidence in the record that undermined the credibility of Plaintiff's assertions related to her asthma. Thus, the objective medical record supports the adverse credibility determination. *See Greger*, 464 F.3d at 972; *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (an ALJ may consider "contradictions between claimant's testimony and the

relevant medical evidence").

### 5.    Conclusion

For the reasons set forth above, the ALJ properly set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958. Accordingly, Plaintiff fails to show the ALJ erred in rejecting the credibility of his subjective complaints.

## B.    The ALJ's Evaluation of the Medical Record

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A physician's opinion is not binding upon the ALJ, and may be discounted whether or not another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830. When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the Court when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). Here, Plaintiff contends the ALJ erred in evaluating the opinions of Dr. Ahmed, his

treating pulmonologist. (Doc. 19 at 7-10)

The ALJ indicated he gave "little weight to the opinion of Dr. Ahmed concerning the claimant's overall RFC." (Doc. 13-12 at 14) The ALJ observed:

> In a pulmonary medical source statement, dated November 2, 2010, Dr. Ahmed asserts that the claimant cannot perform even the full range of sedentary work, indicating that the claimant reported extreme shortness of breath and dyspnea on exertion, but nevertheless can walk 2 blocks without rest (Exhibit 10F, page 2). Dr. Ahmed finds the claimant [can] sit or stand more than one hour at a time and can sit, stand and walk less than 2-hours in an 8-hour day. He can rarely lift less than 10-pounds. He would need to take unscheduled breaks every 15 minutes, can rarely or never perform any postural movements. Dr. Ahmed further asserted the claimant must not only avoid all pulmonary and environmental exposure to irritants, but somehow would be off-task 20-percent of the time and would likely miss work about two days per month (Exhibit 10F, pages 3-4).

(*Id.*) The ALJ rejected these findings, concluding the RFC appeared "to be based in large part on the claimant's subjective complaints, which are shown by the record to be suspect." (*Id.*) The ALJ also concluded Dr. Ahmed's conclusions were "inconsistent with his own findings and treatment notes," as well as the medical record as a whole. (*Id.*) Significantly, as discussed below, the Ninth Circuit has determined the opinion of a treating physician may be rejected for each of the reasons articulated by the ALJ. *See, e.g., Batson v. Comm'r of the Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2003); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

### 1.       Inconsistencies with Dr. Ahmed's treatment notes

The Ninth Circuit explained the opinion of a treating physician may be rejected where an ALJ finds incongruity between a treating doctor's assessment and his own medical records, and the ALJ explains why the opinion "did not mesh with [his] objective data or history." *Tommasetti*, 533 F.3d at 1041; *see also Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where the treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); *Morgan v. Comm'r of the Soc. Sec. Admin*., 169 F.3d 595, 603 (9th Cir. 1999) (explaining inconsistencies supports the decision to discount the opinion of a physician).

Here, the ALJ observed that "Dr. Ahmed repeatedly found the claimant well-nourished and well-appearing, in no distress, with normal mood and affect." (Doc. 13-12 at 14-15) In addition, the ALJ noted Plaintiff had "normal physical examination[s] other than his respiratory conditions, with

18

clear lungs and normal heart rate and rhythm." (*Id.* at 15, citing, *e.g.,* Doc. 13-8 at 1; Doc. 13-10 at 112). As the ALJ noted, "Dr. Ahmed clearly [found] repeatedly that the claimants lungs are clear upon examination." (*Id.*) Further, the ALJ determined "[t]he most recent treatment notes indicate that claimant's COPD is stable and the claimant reports he is 'doing well' despite his continued smoking." Accordingly, the ALJ concluded that "Dr. Ahmed's assertion the claimant's COPD related impairments would cause him to be off task 20-percent of the time and would necessitate unscheduled breaks is contradicted by his own treatment notes." (*Id.* at 14)

Because the ALJ met his burden to identify inconsistencies with Dr. Ahmed's conclusions and this treatment notes, the inconsistencies support the ALJ's decision to give "less weight" to the conclusions of Dr. Ahmed.

2.      Inconsistencies with the medical record as a whole

The Ninth Circuit has determined that inconsistency with the overall record constitutes a legitimate reason for discounting a physician's opinion. *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 602-03 (9th Cir. 1999). However, to reject an opinion as inconsistent with the medical record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). The Ninth Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey*, 849 F.2d at 421-22.

Here, the ALJ found Dr. Ahmed's opinion was "unsupported by the actual clinical and diagnostic record." (Doc. 13-12 at 14) Specifically, the ALJ found "no evidence in the record to support the extreme lifting, standing, walking and postural limitations asserted by Dr. Ahmed." (*Id.* at 15) The ALJ explained:

> There is no support at all for Dr. Ahmed's finding that the claimant is unable to sit for more than 2-hours. The claimant has never been treated or diagnosed for any musculoskeletal impairment that would justify such a limitation, despite his complaints of low back pain. (Exhibit 20F). There is no diagnostic evidence of any spinal impairment and the claimant did not allege[] back pain in his testimony.

> The most recent treatment notes indicate the claimant's COPD is stable and the claimant reports he is "doing well" despite his continued smoking (Exhibits 20F, pages 8, 14, 16 and 18, 19F, pages 29-30, 32, 41, and 29F, page 5). There is nothing in the clinical record to show that the claimant is likely to miss two days per month at work. There is no evidence of reported emergency room treatment for COPD for asthma, and no

indication or prescription for oxygen given to the claimant. No treating or examining source indicates the claimant is unable to ambulate effectively because of his respiratory impairments, with Dr. Ahmed clearly finding repeatedly that the claimant's lungs are clear upon examination and the claimant is able to walk 2 blocks before rest (Exhibit 10F, page2). That is hardly a less than sedentary walking limitation.

(Doc. 13-12 at 15) Further, the ALJ noted the most recent pulmonary function test should only mild restrictive airway disease, which "was not the kind of extreme respiratory limitation required to support Dr. Ahmed's extremely limiting RFC assessment of the claimant." *Id.*

Because the ALJ met his burden to identify evidence in the record—including Dr. Ahmed's own notes and Plaintiff's positive response to treatment—the longitudinal evidence supports the ALJ's decision to give minimal weight to the opinion. *See Morgan*, 169 F.3d at 602-03; *Tommasetti*, 533 F.3d at 1041.

### 3. Reliance upon Plaintiff' subjective complaints

The Ninth Circuit has determined that an ALJ may reject an opinion predicated upon "a claimant's self-reports that have been properly discounted as not credible." *Tommasetti*, 533 F.3d at 1041; *see also Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) ("The ALJ thus disregarded [the physician's] opinion because it was premised on Fair's own subjective complaints, which the ALJ had already properly discounted. This constitutes a specific, legitimate reason for rejecting the opinion of a treating physician.") For example, in *Tommassetti*, the Court reviewed the physician's records, and found "they largely reflect[ed] Tommasetti's reports of pain, with little independent analysis or diagnosis." *Id.*, 533 F.3d at 1041. Because the ALJ found the claimant's subjective complaints lacked credibility, the Court concluded that "the ALJ's adverse credibility determination supports the limited rejection of [the physician's] opinion because it was primarily based on Tommasetti's subjective comments concerning his condition." *Id.*

Similarly, here, the ALJ determined the limitations identified by Dr. Ahmed appeared "to be based in large part on the claimant's subjective complaints" due to the lack of objective evidence to support Dr. Ahmed's conclusions. (Doc. 13-12 at 14) Because the ALJ properly rejected the credibility of Plaintiff's subjective complaints, it was also proper for the ALJ to give less weight to the opinions of Dr. Ahmed that relied upon Plaintiff's reports of pain. *See Tommasetti*, 533 F.3d at 1041.

///

## C.      Substantial Evidence Supports the RFC

When an ALJ rejects contradicted opinions of physicians, the ALJ must not only identify specific and legitimate reasons for rejecting those opinions, but the decision must also be "supported by substantial evidence in the record." *Lester*, 81 F.3d at 830.  Accordingly, because the ALJ articulated specific and legitimate reasons for rejecting the opinion of Dr. Ahmed, the decision must be supported by substantial evidence in the record.

The term "substantial evidence" "describes a quality of evidence ... intended to indicate that the evidence that is inconsistent with the opinion need not prove by a preponderance that the opinion is wrong."  SSR 96-2p, 1996 SSR LEXIS 9 at *8[4].  "It need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion."  *Id.*  Here, the RFC determination that Plaintiff is able to perform a light work—including "lifting and carrying 20-pounds occasionally and 10-pounds frequently" with a sit/stand option and environmental limitations—is supported by opinions of Drs. De la Rosa and Wahl, which the ALJ gave "significant weight."

As the ALJ observed, Drs. De la Rosa and Wahl opined Plaintiff "could perform a range of light work with pulmonary restrictions."  (Doc. 13-12 at 13)  The ALJ explained these findings were supported by "improvement in the claimant's PFT results" and "x-rays indicating no acute cardiopulmonary disease."  (*Id.*)  Further, Dr. De la Rosa noted Plaintiff's "examinations "show[ed] nothing other than respiratory issues."  (Doc. 13-8 at 13)  Because the opinions of Drs. De la Rosa and Wahl were "consistent with other independent evidence in the record"—including the treatment notes and observations of Dr. Cabatba, who found Plaintiff's lungs were clear upon examination —the physicians' opinions are substantial evidence supporting the RFC articulated by the ALJ.  *Tonapetyan*, 242 F.3d at 1149.

///

---

[4] Social Security Rulings (SSR) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, the Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

## CONCLUSION AND ORDER

For the reasons set forth above, the Court finds the ALJ set forth clear and convincing reasons for finding Plaintiff lacked credibility, and the ALJ's analysis of the medical record was proper. Further, the RFC determination incorporated the limitations and abilities as assessed by Drs. De la Rosa and Wahl, and is supported by substantial evidence in the record. Consequently, the ALJ's determination that Plaintiff is not disabled must be upheld by the Court. *Sanchez*, 812 F.2d at 510.

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1.    The decision of the Commissioner of Social Security is **AFFIRMED**; and

2.    The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Roy Lee Jones.

IT IS SO ORDERED.

Dated:    **March 2, 2016**                         **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE